In the Matter of O. Max GARDNER, III, et al., Debtor.

Petition No. SH-B-79-230.

United States Bankruptcy Court, W.D. North Carolina, Shelby Division.

Dec. 16, 1982.

---

F. Donald Bridges, Bridges & Bridges, Shelby, N.C., for debtor.

Thomas R. Cannon, Charlotte, N.C., Susan H. Lewis, Chapel Hill, N.C., for Janet H. Gardner.

## ORDER ON CONTRACT REJECTION

MARVIN R. WOOTEN, Bankruptcy Judge.

■ This matter came on for hearing before the undersigned United States Bankruptcy Judge on November 29, 1982 and again on December 8, 1982, upon the issue of the debtor's intention to reject an executory contract; and it appearing to the Court that no procedural basis or pleading foundation has heretofore been laid to invoke the jurisdiction of this Court in connection therewith and the constitutionally required notice has not been given; therefore, this matter appears to be improperly before this Court and is in such a posture that it renders the Court unable to legally act upon the request.

From the record, it appears to the Court that O. Max Gardner, III, the debtor herein, filed his bankruptcy petition on December 14, 1979. Prior to the filing of said petition, and on May 1, 1979, the debtor entered into a separation agreement contract with his former wife, establishing the rights and obligations of both parties to said contract, and therein specified certain transfers of property between the parties which may or may not constitute preferences or fraudulent conveyances under the Bankruptcy Code. The full contract or separation agreement between the parties, husband and wife, is a matter of record in this case. The issues attempted to be presented in the aforementioned hearings deal with the subject of rejection of executory contract and not with issues of possible preferences or fraudulent conveyances. The debtor is attempting to reject this separation contract, contending that it is an executory contract which he has the right to reject under 11 U.S.C. 365(a) and (d)(2). The only document relating to rejection of the separation agreement in any record in this case is one

entitled "Notice of Rejection of Executory Contract," which notice was docketed on April 21, 1980 in the file in Adversary Proceeding No. 82–0071, entitled Gardner vs. Gardner, said action having been removed from the state court to this Court by the debtor on April 4, 1980. No hearing has been held to date on the "Notice of Rejection of Executory Contract." The divorce action in which the notice was filed has heretofore been remanded by this Court back to the General Court of Justice, District Court Division, Cleveland County, North Carolina on January 11, 1982, and is no longer before this Court for its consideration.

The only documents in the bankruptcy file (No. SH–B–79–230) referring to this matter are two handwritten notes from the debtor, received by the Court on October 22, 1982, stating that the debtor had scheduled the matter of rejection of executory contract for hearing on November 12, 1982. These handwritten notes are not a part of the formal record in this bankruptcy case, are not docketed, and do not constitute a pleading to establish the procedural prerequisites for placing such matter before the Court for decision and do not comply with the procedural and constitutional prerequisites for jurisdictional notice.

There have been two hearings on the issue of "rejection of executory contract" without the procedural prerequisites for jurisdiction having been complied with, and it is apparent to the Court that the confusion created thereby is serving only to compound, confuse and delay resolution of the state court action heretofore remanded by this court.

Therefore, notwithstanding the improper procedural basis, the Court concludes that it would be in the best interests of all parties to offer and issue its advisory opinion regarding the matters in controversy for the guidance of the state court and the parties, so that each may proceed appropriately in its discretion.

■ The Sections of Title 11 upon which the debtor relies to reject the alleged executory contract are Secs. 365(a) and (d)(2). Section 365 reads as follows:

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

. . . . .

(d)(2) In a case under chapter 9, 11, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of the debtor at any time before the confirmation of a plan, but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

Section 365(a) provides for the rejection of an executory contract if court approval is obtained, while Section 365(d)(2) sets the time frame established or to be established. Section 365(d)(2) in no way negates the need for Court approval of such a rejection; therefore, the Chapter 11 trustee or debtor must obtain Court approval in a Section 365(a) attempt to reject, within the time frame established under subsection (d)(2).

In studying the legislative history of Section 365 of Title 11 U.S.C., it appears that the writers deliberately chose not to define the term "executory contract." House Report No. 95–595 states:

Though there is no precise definition of what contracts are executory within the contemplation of Section 365, it generally includes contracts on which performance remains due to some extent on both sides.

House Report No. 95–595, 95th Congress, 1st Session (1977) 347; Senate Report No. 95–989, 95th Congress, 2d Session (1978) 58, U.S.Code Cong. & Admin.News 1978, p. 5787. This definition is somewhat different than the one propounded by Professor Countryman, that an executory contract is one "under which the obligation of both the bankrupt and the other party to a contract are so far unperformed that failure of either to complete performance would constitute a material breach excusing the performance of the other." See *In re Sun Ray*

*Bakery, Inc., Debtor,* 2 Collier Bankruptcy Cases 2d 998 (B.Ct., D.Mass.1980). In the instant case, areas of performance that remain due include, but are not limited to, the following: (1) the former wife's making the children available for visitation in accord with the contract; (2) the signing of certain deeds, titles, or other papers by both parties in accord with the contract; (3) the husband's payment of such alimony and child support as is due; and other future and continuing obligations.

This Court is of the opinion that in the case at issue, regardless of whether one chooses the legislative history definition or Professor Countryman's definition, there remains due substantial performance by both parties to the separation contract.

■ Having determined that the contract under consideration is an executory contract within the contemplation of Section 365 of the Code, the Court now must consider whether or not it should approve the debtor's desire to reject such contract.

In the first place, a rejection of the executory contract in this case will have no beneficial effect upon the estate of the debtor, except to the extent that such rejection might trigger the return of property transferred thereby. In that connection, it is noted that any property transferred on account of the separation agreement, at the time of or subsequent thereto, is subject to appropriate attack by the debtor or Trustee as a fraudulent conveyance or preference under the Code, as the case may be. In so far as the estate is concerned, a rejection of the contract today, if it had the effect of ending the alimony and support payments therein required for the future would be of no benefit to the estate for the reason that the contract is a valid one to the date of its rejection, and the obligations thereunder to that date would continue and would be subject to be dealt with by any plan to be submitted by the debtor. Similarly, the debtor is liable for the full extent of the contract, to date, to date as to alimony, which said debt is not discharged, and a rejection of the contract would not reduce any such alimony or support payments re-

quired by the contract to date of rejection and would therefore have to be dealt with by the debtor in his plan. It is the opinion of the Court that a rejection of the contract by the debtor would not work a disappearance of the contract and that it would still be available for use by either of the parties in the state court action. The most that a rejection would benefit the debtor would be to further confuse and delay the issues presently pending in the North Carolina District Court.

From the debtor's point of view, the contract in this case to date has *not* been rejected, and even if such rejection were allowed today, he would still owe the full extent of the contract, to date, albeit unsecured, whether or not the debtor is in a Chapter 7 or a Chapter 11. A balancing of the equities between the debtor and his wife and children indicates that while there might be some benefit to the post confirmation debtor, such benefit would be at the expense of his wife and children, and his responsibilities for alimony and support under North Carolina law and under his contract, the result being a far greater detriment to the spouse and children than any benefit to the debtor. This is true particularly when it is noted that the law provides for the nondischargeability of alimony and support for wife and children. Therefore, the Court concludes that this is not such a contract, the rejection of which it would be inclined to approve.

Insofar as the property settlement provisions of the separation agreement are concerned, those matters can be more properly handled and sorted out in an appropriate dischargeability adversary as provided by the Code if and when the debtor or the Trustee seeks such relief. To the extent that the property settlement, if any, exists, the same may be appropriately dealt with by the Trustee and/or debtor in possession under the provisions of the Code as fraudulent or preferential. Thus, the only apparent effect of rejection of the separation agreement in the case would be the use of said rejection as a weapon against the debtor's former spouse and children in the state

court action, and would result in no beneficial effect upon the estate in this case; therefore, this Court is of the opinion that it should not interfere with the remanded case when no apparent benefit would inure to the estate herein.

The Court is further of the opinion that the debtor may not by the use of the device of "rejection of executory contract" under Section 365 of the Code negate the obvious effects of the dischargeability provisions relating to alimony and support. Though, as stated above, the debtor may gain some personal advantage in the lawsuit, the debts of alimony and support, to the extent that they are just that, are non-dischargeable and the debtor with reference thereto is not entitled to any relief therefrom in the bankruptcy context. Therefore, the state court is completely free to proceed in its discretion and wisdom to set that level of alimony and support for the wife and children in this case as it deems appropriate, and the use of the executory contract in that connection is in no wise prohibited or limited.

■ The Court is further of the opinion that only in the most rare of exceptional circumstances should any debtor be permitted to use the Bankruptcy Code as a device to defeat, hinder or delay the rights of spouses and children, particularly as their rights relate to legal obligations for support for which discharge under the Code is absolutely denied.

In conclusion, it is the opinion of this Court that it does not have jurisdiction to render a decision on the issue of executory contract rejection herein, due to the lack of procedural prerequisites and notice. However, despite the lack of jurisdiction to determine the issues improperly placed before the Court, the Court concludes that it should, for the benefit of the parties and the state court, render its advisory opinion regarding the matters herein discussed, which is as follows:

1. In the balancing of the equities between the parties here involved equity would weigh in favor of the Court's refraining from the approval of the attempted rejection of the executory contract herein under Section 365 of the Code.

2. Insofar as the executory contract deals with property rights, as distinguished from alimony and support, those matters should appropriately be dealt with in a proper adversary proceeding as preferences or fraudulent conveyances, if any, as the case may be.

3. The Court should only in the rarest of exceptional circumstances approve the rejection of an executory contract covering debts which would otherwise be non-dischargeable.

4. The state court is free to proceed with such dispatch as it deems appropriate, in its complete discretion, with the handling of the issue before it in accordance with the laws of the State of North Carolina insofar as it relates to the rights between the parties, their divorce, and/or alimony and support, if any, and the extent or level thereof.

5. All of the alimony and support as provided by the executory contract herein are due and payable and are obligations of the debtor, to be treated in his plan as unsecured claims, and to the extent that the same are not paid thereunder, are still due and payable for the reason that the same are non-dischargeable.